**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ———————————————— | ) | |
| SANDRA JONES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 16-cv-154 (RCL) |
| | ) | |
| R.G. BARRY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiff Sandra Jones challenges her termination by defendant R.G. Barry Corporation as a discriminatory violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ *et seq.* (ADEA) and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* (Title VII). Barry Corp. now moves for summary judgment. Before the Court is Barry Corp.'s motion [ECF No. 16] for summary judgment, Jones' response [ECF No. 17], and Barry Corp.'s reply [ECF No. 19]. For the reasons articulated below, the Court finds that the motion for summary judgment should be DENIED.

### II.    BACKGROUND

R.G. Barry Corporation produces footwear and accessories, most notably Dearfoam slippers. Sandra Jones began working for Barry Corp. on September 7, 1982 when she was twenty-five years old. She started at a sewing factory in San Angelo, Texas, but she was later employed at the San Angelo distribution center. In 2007, Glenn Evans, Barry Corp.'s Senior Vice President for Global Operations, promoted Jones to Distribution Center Manager. In this role, Jones was

responsible for management of the warehouse and production process, packaging and inventory methods, and communications between management and staff. Evans served as her direct supervisor.

In April 2012, Barry Corp. closed the distribution center and began a transition process to a third-party logistics provider called UTi Transport Solutions, located in California. The transition to UTi was intended to reduce Barry Corp.'s costs by outsourcing distribution and logistics services while minimizing the overhead costs of maintaining its own distribution centers. A consequence of these cost cutting measures was that the employees at the San Angelo Distribution Center were terminated. However, Barry Corp. retained Jones to oversee the transition to UTi. Jones was allowed to work remotely from her home in Texas, rather than move to California or Barry Corp.'s headquarters in Ohio. Evans testified that he expected to keep Jones only on a temporary basis, lasting no more than 18 months.

In October 2012, Barry Corp. hired Chris Dickson as Vice President of Logistics. Jones was to report to Dickson, and Dickson was to report to Evans. Because there was no longer a distribution center to manage, Jones' position was no longer Distribution Manager. Under Evans, Jones served as a logistics manager. After October 2012, Dickson created a new title for Jones called "Operations Manager."[1] It is unclear whether the difference in title translated to a difference in responsibilities or duties at that time.

In the fall of 2013, Kathleen Wood worked as a Compliance Manager, supervising Jones until Jones was terminated in January 2015. In a performance review for the period of August 1, 2013 to July 31, 2014, Woods noted that Jones had either fully met or exceeded expectations for that

---

[1] Jones testified that "once the Distribution was closed, Glenn [Evans] had [her] as a Logistics manager; and when Chris Dickson came onboard, he wanted it changed to Operations Manager." Jones Depo [ECF No. 16-1] 16.

year. Pl.'s Ex. C-5 [ECF No. 16-3]. At some point in December 2014, Glenn Evans made a decision to terminate Jones. Evans Depo. 26-27. Evans testified that Jones was terminated for multiple reasons, stating that the company was looking to reduce costs and that Jones' skill set was not one that Barry Corp. needed going forward. *Id.*

Also in December 2014, prior to her termination, Barry Corp. amended the position of Operations Manager. *See* Statement of Position Responsibility [ECF No. 16-1] p. 76. The primary responsibility of the Operations Manager was management of all distribution, warehousing and operations with third-party service providers. *Id.* The new position required an undergraduate degree in a related field, experience in management, 3-5 years of experience in a logistics and operational management role, and a minimum of 3 years in increasingly responsible experience. *Id.* Similar qualifications were not required for Jones' previous position as Distribution Center Manager. Jones does not have an undergraduate degree.

On January 2, 2015, Dickson and Evans—the Vice President of Logistics and Senior Vice President for Global Operations, respectively—called Jones and informed her that her position was being eliminated. At the time of Jones' termination, Barry Corp. was operating under "Code RED," a process under which Barry Corp. emphasizes reducing, eliminating, or delaying expenses during a financially difficult period.[2] According to Dickson and Evans, Jones' job duties were to be distributed among other Barry Corp. employees in an effort to reduce costs.[3] In a January 5, 2015 e-mail distributed to all Barry Corp. employees, Barry Corp. CEO Greg Tunney announced efforts to "realign staffing in some areas of the business in an effort to impact fixed costs." Tunney E-

---

[2] Code Red stands for "reduce, eliminate, and delay," and is often implemented if sales are not reaching projections for the year. Tunney Depo. [ECF No. 17-2] p. 32.

[3] Barry Corp. claims that Jones' compliance responsibilities were outsourced to a third-party company, the management of UTi operations were eliminated as the UTi transition was complete, the budgeting duties were absorbed by Dickson, and the day-to-day operations were assigned to Seth DeVlugt.

Mail [ECF No. 17-10]. CEO Tunney incorrectly stated that Jones had retired. *Id.* He also noted that "the duties previously handled by Sandra Jones . . . [were assigned] to Seth DeVlugt.[4]

Seth DeVlugt was a 27-year old Logistics Project Manager based at the Barry Corp. headquarters in Columbus, Ohio. He held a B.S from Ohio State University, majoring in operations management, graduating in 2011. He also had some experience with software and information technology as a result of his previous employment as an information technology recruiter. DeVlugt began working with Barry Corp. in December 2011 as a Trade Compliance Analyst. A year later, in October 2012, he was promoted to Customer Compliance Analyst under Kathleen Woods. In August 2013, he became a Logistics Specialist and/or Logistics Project Manager, under Chris Dickson.[5]  In that position, he apparently helped transition one of Barry Corp.'s distribution centers in Portland, Oregon to a third-party service provider. According to Jones, this project was completed in February 2014, and DeVlugt had very little work for most of the 2014-2015 fiscal year. After Jones was terminated, DeVlugt was promoted to the newly amended Operations Manager position. ECF No. 16-3, p. 3.

On April 22, 2015, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on age and sex, in violation of ADEA and Title VII respectively. *See* EEOC Intake Form [ECF No. 16-1] p. 68. She claimed that she was terminated so that DeVlugt, a younger male employee, could be retained and promoted. Specifically, in the EEOC form, Jones named Glenn Evans as the person responsible, stating "I

---

[4] CEO Tunney also announced the elimination of other positions, which resulted in the termination of at least three employees: Brenda Kelso, Tamara Olsen, and Sandra Jones. However, Tunney incorrectly noted that Sandra had retired, when she had in fact been terminated.

[5] Some Barry Corp. documents list DeVlugt's title as "Logistics Project Manager" while others list him as "Logistics Specialist." *Compare* ECF No. 16-3, *with* ECF No. 17-8. Similarly, while Evans referred to DeVlugt as a Project Manager in his testimony, Barry Corp.'s EEOC Statement refers to him as a Logistics Specialist at the time. ECF No. 17-3 p. 5.

believe he has been grooming this young man who has been refer [sic] to as up and coming. His job was eliminated. He was given mine." *Id.*  She also claimed that DeVlugt had no experience in distribution or management, while she had 25 years of relevant experience within the company. *Id.* Jones also claims that in December 2014 DeVlugt had no real responsibilities within the company, that his job had not been needed for "seven or eight months," and that she was terminated to make room for DeVlugt. Jones Depo. [ECF No. 17-1] p. 8.

On June 5, 2015, Barry Corp. sent a position statement to the EEOC regarding Jones' claims. *See* EEOC Statement [ECF No. 17-13]. In it, Barry Corp. claimed that there is no evidence that it discriminated against Jones based on her age or sex. *Id.* Specifically, Barry Corp. argues that Jones was consistently promoted throughout a 25-year career with the company and was retained by Evans during the 2012 San Angelo closure, despite the company implementing cost-cutting measures. Barry Corp. stated that it implemented another cost-cutting exercise in December 2014, and that Jones' position was eliminated as part of a reduction in force to reduce spending. This was in part because UTi was largely self-sufficient by December 2014 and because Jones' responsibilities could be absorbed by employees located in company headquarters. *Id.* at p. 5. However, Barry Corp. noted that Jones was told that "if she ever desired to relocate, the Company would have continued to employ her." *Id.* at p. 6.

Jones was issued a Notice of Right to Sue by the EEOC on November 24, 2015, which was received on November 27, 2015. This action was timely filed February 12, 2016, less than 90 days after her receipt of the Right to Sue. Compl. [ECF No 1]. Defendant Barry Corp. now moves for summary judgment, arguing that Jones cannot establish a *prima facie* case of age or sex discrimination. Alternatively, Barry Corp. argues that Jones has no evidence that her termination was for any purpose other than to reduce costs, and therefore cannot establish pretext.

### III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine issue of material fact. *Id*. "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant does not bear the burden of proof at trial, he is entitled to summary judgment if he can point to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Similarly, a movant without the burden of proof at trial may be entitled to summary judgment if sufficient evidence "negates" an essential element. *Id*. The lack of proof as to an essential element renders all other facts immaterial. *Id.*

A fact is material if it could affect the outcome of a case. *Anderson*, 477 U.S. at 247. A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Anderson*, 477 U.S. at 247. However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id*. at 249-250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id*. *See*

*also* Fed. R. Civ. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

## IV.   ANALYSIS

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Under the ADEA, it is similarly unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). District courts have jurisdiction over actions brought under Title VII and the ADEA. 29 U.S.C. § 2000e-5(f)(3); 29 U.S.C. § 626(c); 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3)-(4).

Discrimination cases under Title VII and the ADEA are conducted under a burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[6] In Title VII cases, plaintiffs must first establish a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason or the adverse action. *Id.* The burden then shifts back to plaintiff to establish that the legitimate reasons offered were not the true reasons, but merely pretext for discrimination. *Id.* "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Burdine,* 450 U.S. at 253).

---

[6] The Fifth Circuit has applied the *McDonnell Douglas* framework to ADEA cases as well. *See Jackson v. Cal-Western Packaging Corp*., 602 F.3d 374, 378 (5th Cir. 2010) (citing ample circuit precedent applying the *McDonnell Douglas* framework to ADEA cases).

Barry Corp argues that it is entitled to judgment as a matter of law because there is no evidence to support two essential elements under this *McDonnell Douglas* framework: (1) a *prima facie* case of discrimination and (2) pretext.[7] Because the facts underlying the Title VII claim and ADEA claim are identical, and because those claims involve similar evidentiary burdens, the Court will consider the Title VII and ADEA claims together.

### a. Jones has established a *prima facie* case of discrimination.

In gender discrimination cases, a plaintiff must provide evidence that she (1) is a member of a protected class; (2) was qualified for *the position she held*; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class," or, in the case of disparate treatment, shows "that others similarly situated were treated more favorably." *Okoye v. Univ. of Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (emphasis added). When the employer does not plan to replace the discharged plaintiff, such as in a reduction in force, the plaintiff may show that (1) she was a member of a protected class, (2) that she was qualified to assume *another* position, (3) that she was adversely affected by an employment action, and (4) whether members outside the protected class remained in similar positions after the reduction. *See Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir. 1999) (citing *Vaughn v. Edel,* 918 F.2d 517,

---

[7] Some circuits reason that on an employer asserts a legitimate, nondiscriminatory reason for its decision, the district court should not waste time and effort deciding whether the plaintiff has established a *prima facie* case. *See Brady v. Office of the Sergeant at Arms,* 520 F.3d 490, 493–94 (D.C. Cir. 2008); *Newton v. Office of the Architect of the Capitol,* 840 F. Supp. 2d 384, (D.D.C. 2012). Rather, under this *Brady* approach, the district court proceeds to one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason *and* that the employer intentionally discriminated against the employee on the basis of race, color, sec, or national origin . . . ." *Brady,* 520 F.3d at 494; *see also Barnett v. PA Consulting Grp., Inc.,* 715 F.3d 354, 358 (D.C. Cir. 2013) (applying the *Brady* framework to the ADEA).

However, the Fifth Circuit has apparently declined to follow the *Brady* approach. *See Atterberry v. City of Laurel*, 401 Fed. Appx. 869, 871 n. 1 (5th Cir. 2010) ("Whatever the merits of Brady may be, our rule of orderliness requires that we follow our own precedent.") (citing *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999)). Accordingly, this Court must first determine whether Jones has made the requisite *prima facie* showing of discrimination before deciding the ultimate question of whether enough evidence exists to establish pretext.

521 (5th Cir. 1990)); *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996); *see also Campbell v. Zayo Grp., LLC*, 2015 WL 3903539, at *3 (N.D. Tex. June 25, 2015); *Hall v. Sealy, Inc.*, 2011 WL 4389701, at *4 (N.D. Tex. Sept. 21, 2011).

The elements of a *prima facie* case under ADEA claims are identical. "[T]o show a prima facie case of age discrimination, the plaintiff must show that (1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job." *Price v. Maryland Cas. Co.*, 561 F.2d 609, 612 (5th Cir. 1977). Job reduction cases are worded slightly different, but largely similar: a plaintiff must establish (1) that she is within the protected age group under the ADEA and that she had been adversely affected, discharged, or demoted, (2) that she was qualified to assume *another* position at the time of discharge, and (3) some evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching its decision. *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981), *cert. denied*, 455 U.S. 943 (1982) (emphasis added). The circuit has held that this is largely identical to the first three elements under a Title VII claim. *See Meinecke,* 66 F.3d at 83 (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)). The last element under job reduction claims can be established with evidence that she was "either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Meinecke*, 66 F.3d at 83; *Bodenheimer*, 5 F.3d at 957. The fact that younger, less qualified employees were retained during a reduction in force is sufficient evidence to support a *prima facie* case. *See Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 639–640, 646–647 (5th Cir. 1985), abrogated on other grounds by *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Barry Corp. argues that Jones cannot establish a *prima facie* case of gender or age discrimination. It is undisputed that Jones was a member of a protected class, both as a woman and as an employee over the age of 40, and that she was subject to an adverse employment action, *i.e.* termination. But Barry Corp. argues that Jones cannot raise evidence showing that Jones was qualified for her position or that others outside the protected class remained in similar positions. Mot. [ECF No. 16] 13. Barry Corp. points to the qualifications in the amended Operations Manager description—particularly the undergraduate degree requirement—as evidence that Jones was not qualified for the new position at the time of termination. Barry Corp. also argues that she cannot demonstrate that a male remained in a similar position because the new position required much greater responsibilities and was located in Columbus, OH instead of San Angelo, TX.  In short, Barry Corp. argues that the differences between the "old" Operations Manager position and the "new" one prevent Jones from establishing a *prima facie* case here because Jones was either unqualified for the "new" position or that the "new" position was not sufficiently similar to the one Jones held when she was terminated.

First, Jones suggests that the qualifications as written in the December 2014 listing were intentionally designed to preclude retaining Jones in the hopes of promoting a younger male employee. For support, Jones points to discrepancies between the position statement that Barry Corp. submitted to the EEOC and the later testimony of Evans and Dickson. Resp 13.  Specifically, in its EEOC statement, Barry Corp claimed that Jones would have been retained if she had been willing to relocate to Ohio. Barry Corp. EEOC Statement [ECF No. 17-13] ("[Jones] understood . . . based on prior conversations with Mr. Evans and Mr. Dickson that if she ever desire to relocate [to Ohio], the Company would have continued to employ her."). Jones argues that this contradicts Barry Corp.'s claim now that she was totally unqualified for the "new" Operations Manager

position—a position that she could supposedly have maintained if she had been willing to relocate. Such evidence raises fact questions sufficient to survive summary judgment. Further, Jones' continued employment and positive performance reviews up to December 2014 sufficiently establishes that Jones was qualified for the position she held at the time of her termination. Indeed, as Evans testified, Barry Corp. had only one Operations Manager as of December 2014: Sandra Jones. Under either *prima facie* standard, Jones has raised sufficient evidence that she was qualified.

Second, Jones argues that the changes to the "new" Operations Manager position are superficial and that they are largely similar, if not identical. For support, Jones points to the testimony of Jones' supervisor Kathleen Woods. She testified that she believed that Jones' position was taken over by Seth DeVlugt, and that there was no difference between what Jones was doing before she was terminated and what Vlugt was doing afterwards. Woods Depo [ECF No. 17-4] p. 33. Thus, according to Jones, DeVlugt held the same position, and Jones was replaced by a younger male employee, satisfying the *prima facie* standard articulated in *Okoye*, 245 F.3d at 512. Further, there is also evidence that Jones was qualified to assume another position—perhaps even retain her position—because of testimony that Jones would have remained employed with the company if she had been willing to move to Ohio. *See* Tunney Depo. [ECF No. 17-2] p. 16-18, 80-81; *see also* EEOC Statement [ECF No. 17-13] ("[Jones] understood . . . based on prior conversations with Mr. Evans and Mr. Dickson that if she ever desire to relocate [to Ohio], the Company would have continued to employ her."). Thus, there is evidence that Jones was qualified to assume another position. Because she was qualified, and because a younger male employee either replaced her or remained in a similar position during the reduction in forces, Jones has presented evidence that

can satisfy the *prima facie* standard under *Bauer*, 169 F.3d and 966, and *Woodhouse*, 92 F.3d at 252.

Finally, because the *prima facie* elements are largely identical under the ADEA, Jones' evidence also establishes that she was qualified and contained sufficient circumstantial evidence that would allow a factfinder to conclude that Barry Corp. intended to discriminate against employees over 40. *See Williams*, 656 F.2d 120; *Bodenheimer*, 5 F.3d at 957. Specifically, Jones has raised evidence that she was replaced by a younger employee, or at least that a younger, less qualified employee was retained during a reduction in force.[8] This is sufficient to support a *prima facie* ADEA claim. *Meinecke*, 66 F.3d at 83; *Thornbrough*, 760 F.2d at 644-45.

Ultimately, a *prima facie* case requires only a very minimal showing raising the inference of discrimination. *Burdine*, 450 U.S. at 253-54 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). This burden is not onerous. *Id*. An employer's acts, otherwise unexplained, are presumed to be based on impermissible factors. *Id.* Whether viewed as a replacement case or a reduction in forces case, Barry Corp. selected a younger, male employee over an older, female employee for the position of Operations Manager, and there is sufficient evidence to raise a fact question that Jones was qualified and whether the Operations Manager positions were similar. Thus, for the reasons noted above, Jones has presented sufficient evidence to pass this minimal burden.

---

[8] Barry Corp. disputes that DeVlugt was less qualified, arguing that Jones lacked an undergraduate degree required for the Operations Manager position. Mot. 13. In fact, Barry Corp. is adamant that DeVlugt is more qualified because of his undergraduate degree and his experience with software and information technology—particularly "Simparel," Barry Corp.'s software system. But Jones has raised evidence that DeVlugt lacked the 3-5 years of logistics and operational management experience required for the position. While it is not clear whether or not DeVlugt was less qualified than Jones, Jones presented enough evidence to establish a *prima facie* case and survive summary judgment.

**b. Barry Corp. can articulate a legitimate, nondiscriminatory reason for terminating Jones.**

Under the *McDonnell Douglas* framework, the burden then passes to Barry Corp. to articulate a legitimate, nondiscriminatory reason for terminating Jones' employment. Barry Corp. has introduced evidence that it terminated Jones as a cost-cutting, force reduction measure implemented during a Code RED. Reductions in force for budgetary reasons are presumptively legitimate, nondiscriminatory reasons to discharge an employee. *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). Further, the fact that Jones may have been qualified for her job or received positive performance reviews is less relevant in reduction in force cases because budgetary reasons may force a business to terminate redundant but otherwise competent, qualified employees. *Id.* Accordingly, Barry Corp. has articulated a legitimate, nondiscriminatory reason for Jones' termination.

**c. Jones has provided evidence that casts doubt on Barry Corp.'s reason, and would allow a reasonable jury to infer that the true reason was discriminatory.**

Under *McDonnell* Douglas, Jones must raise a genuine issue of material fact as to whether Barry Corp.'s proffered reason—a reduction in force—was not the true reason, but was merely pretext for discrimination. *Reeves*, 530 U.S. at 143. To establish pretext, the presented evidence must allow a reasonable jury to find that the proffered reason is "false or unworthy of credence," and that the true reason is discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Reeves*, 530 U.S. at 147 (quoting *St. Mary's*, 509 U.S. at 511); *see also Laxton*, 333 F.3d at 579.  However, this disbelief must be supported by some evidence. The employee's

subjective belief of discrimination is insufficient; the plaintiff must produce "substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001) (quoting *Bauer*, 169 F.3d at 967). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147. Thus, when coupled with the *prima facie* case, a reasonable jury may infer intentional discrimination based on falsities or inconsistencies in the employer's explanation. *Id.*

Jones argues that Barry Corp.'s explanation for her termination is inconsistent with prior statements and testimony from its employees. Mot. 16. Specifically, there is conflicting testimony on whether Jones' position was eliminated and her duties absorbed by other employees, or whether DeVlugt simply replaced Jones as Operations Manager. *Compare* EEOC Statement (stating Jones' position was eliminated) and Tunney E-Mail [ECF No. 17-10] (that DeVlugt would take over Jones' duties), *with* Woods Depo [ECF No. 17-4] p. 40 (stating that she was told the project manager position, rather than the operations manager position, had been eliminated). Similarly, there is conflicting testimony on whether Jones was offered to remain employed if she was willing to relocate to Ohio. *Compare* Tunney Depo. pp. 16-19 (testifying that Jones consistently was offered a job in Ohio up until the day she was terminated) and EEOC Statement (noting that Jones knew she could have continued to work for Barry Corp. if she was willing to relocate, and that Barry Corp.'s Senior Vice President of Human Resources even mentioned this *after* her termination), *with* Evans Depo. (testifying that Jones' skill set was no longer needed going forward, and that there was no opportunity for her to keep her job as of December 2014 even if she relocated).

Jones claims that these inconsistencies allows a reasonable jury to infer that Barry Corp.'s reduction in force reasoning pretextual. *See Reeves,* 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose."); *Gee v. Principi*, 289 F.3d 342, 347 (5th Cir. 2002) (reversing summary judgment when the plaintiff had pointed to "disingenuous and inconsistent statements" made by defendant during the investigation and administrative hearing because such inconsistencies "cast doubt" on the explanation); *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (holding that a jury is entitled to look to erroneous statements made in an EEOC position statement as circumstantial evidence of discrimination); *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222, 239-40 (5th Cir. 2015) (same).

Barry Corp. argues that its articulated reason for terminating Jones—a cost-cutting force reduction—has never changed. Reply 7. According to Barry Corp., "there is nothing 'inconsistent' between the Company's position statement to the EEOC and its position in the current litigation [that Jones was terminated due to the reduction in force and that her job duties were absorbed by other employees]." *Id.* It argues that any variations between the EEOC Statement and the testimony concerning Jones' ability to remain employed by moving to Ohio are so minor that it does not create an inference of pretext. *See Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 Fed. Appx. 425, 430 (5th Cir. 2016) (recognizing that a rationale may be "suspect" when it changes over time, but noting that "in those cases . . . there has been otherwise strong evidence" of pretext). In other words, Barry Corp. argues its false statements in the EEOC Statement are minor and do not render the reason pretextual because there is no other "strong evidence" of pretext.

But drawing all reasonable inferences in favor of Jones, the nonmovant, this Court cannot agree that there is no evidence of pretext, nor that the inconsistencies here are merely harmless.[9] While Barry Corp. claims that it had determined that Jones' position could be absorbed by other employees to cut costs, the EEOC Statement also claims that if Jones had been willing to relocate, she would have been retained. This is an inconsistency within the EEOC Statement itself. And this inconsistency is augmented by the fact that Evans now testifies that there was actually no opportunity for Jones to relocate and keep her job. Evans Depo. p. 27. Further, Woods testified that she believed that Jones' position was taken over by DeVlugt, rather than Jones' position being eliminated and her duties distributed to other employees, and that there was no difference between what Jones was doing before her termination and what DeVlugt was doing after. Woods Depo. p. 33. Such evidence further establishes potential inconsistencies within the EEOC Statement position—and Barry Corp.'s position now—that Jones' position was eliminated and that DeVlugt was assigned to a different "Operation's Manager" position. Taking Woods' testimony as true, as this Court must, this is evidence that Barry Corp.'s statements that the positions were different and that Jones' duties were split among remaining employees are false or unworthy of credence.

Woods also testified that "directly after the announcement that Glenn made about Seth being . . . given the ops manager position," she spoke to Yvonne Kalucis, Barry Corp.'s HR Director because "that's not what we were told, or what we told Sandra on Friday [January 2, 2015]." *Id.* at 38. According to Woods, she felt "pulled into a deception" about which positions were terminated, in part because Kalucis also stated that "the project manager position was the one that was actually eliminated, not the ops position . . . ." *Id.* at 39-40. Barry Corp. vehemently denies

---

[9] For reasons discussed below, the Court refuses to weigh the evidence supporting pretext as "strong" or "weak." Rather, the Court finds that the evidence to support pretext is "sufficient."

this. But taken as true, this is further evidence that Barry Corp.'s positions to the EEOC and here are false or unworthy of credence. Coupled with the elements of the *prima facie* case, the discrepancies here allow a reasonable jury to infer intentional discrimination based on these falsities or inconsistencies in the Barry Corp.'s explanation. *Reeves*, 530 U.S. at 147-48.

### d.   Jones is entitled to rebut the same actor inference.

Barry Corp. also argues that it is entitled to the "same actor" inference under *Brown v. CS Logic, Inc*., 82 F.3d 651, 658 (5th Cir. 1996), abrogated on other grounds by *Reeves*, 530 U.S. at 134. When the person who hired or promoted the employee was also involved in their termination, there is an inference that discrimination was not the motive behind the termination. *Id.* This inference is enhanced when the actor who did the hiring and firing was also a member of the same protected class at issue. *Id.* That is because a discriminatory animus that exists in termination but not in hiring seems irrational, particularly when the purported animus would include the actor herself. *Id.* "It hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Id.* (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991)).

Here, Barry Corp. points to the fact that Evans, who is only four years younger than Jones, promoted her to a management position in 2007, retained her when the San Angelo Distribution Center closed in 2012—when every other San Angelo employee was terminated—and terminated her during the force reduction in 2015. Evans' previously favorable actions demonstrate that he was not motivated by Jones' age or sex, as it would not make sense to hire and retain Jones only to discriminate against her years later. In addition, at the time of Jones' termination, Evans was also within the protected class of the ADEA: employees over 40. This bolsters the inference that Evans' decision-making was free of any discriminatory animus.

But the same actor inference is just that: an *inference*. It is not an irrebuttable presumption that the same actor was not discriminatory. Thus, plaintiffs may present evidence to overcome this inference. *See Brown*, 82 F.3d at 658 ("By expressing our approval of this inference, we do not rule out the possibility that an individual could prove a case of discrimination in a similar situation."). Here, Jones has presented evidence that contradicts the purported reasoning behind Jones' termination. Thus, while Evans is entitled to an inference that he lacked a discriminatory animus, Jones has presented evidence to rebut this inference.

Summary judgment is properly reserved for instances where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The evidence of the nonmovant must be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* For the reasons articulated above, this Court finds that there are genuine issues of material fact as to whether Barry Corp.'s purported reasons were pretextual.

Finally the Court notes that it is unclear whether the plaintiff's burden under *McDonnell Douglas* to provide evidence of pretext is a steeper one when the defendant has invoked the same actor inference at the summary judgment stage. That is, must a plaintiff overcome the legitimate, nondiscriminatory reason <u>and</u> the same actor inference? And would this require *more* evidence than would be required to establish pretext at the summary judgment stage? These questions appear to be unanswered by the 5th Circuit, save for a passing reference in *Brown* to the strength of the plaintiff's evidence. In *Brown*, the court found that "the facts in [that] particular case are not sufficiently <u>egregious</u> to overcome the inference that [defendant's] stated reason for discharging

[plaintiff] was not pretext for age discrimination." *Id.* (emphasis added). The use of the word "egregious" suggests that some additional or sufficiently weighty evidence is required to rebut the same actor inference.[10] But in the face of Supreme Court guidance on the proper summary judgment standard, the Court cannot see how it can apply the same actor inference without weighing the credibility of the evidence in favor of the movant. Accordingly, the Court finds that it cannot render summary judgment here based on the same actor inference because the plaintiff has provided sufficient evidence to raise a question of pretext.

### e.   Jones has raised a material fact as to causation.

Barry Corp. finally argues that Jones cannot establish a nexus between her termination and her age or sex. The burden of proof for pretext is higher for ADEA claims than for Title VII claims. "For an ADEA claim, the plaintiff must demonstrate that age was a but-for cause of the adverse employment action. For a Title VII claim, in contrast, the plaintiff need demonstrate only that sex was a motivating factor." *Reynolds v. Sovran Acquisitions, L.P.*, 650 Fed. Appx. 178, 181 n.4 (5th Cir. 2016). Barry Corp. argues that Jones cannot provide evidence that the proffered reason is false. Similarly, assuming the reason is true, Barry Corp. argues that Jones has no evidence that her age was a but-for cause of her termination, or that her sex was a motivating factor.[11]

---

[10] Further, the court noted that it had recently elaborated on the legal standard to prove pretext in ADEA cases in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996). In a footnote, the court noted that "the existence of the *Proud* presumption, coupled with the insufficiency of the evidence available to rebut that presumption, makes it unnecessary for this court to examine whether the evidence presented by [plaintiff] would satisfy the *Rhodes* standard in the absence of the Proud presumption." *Brown*, 82 F.3d at 658 n. 25. However, *Rhodes* was abrogated by the Supreme Court's decision in *Reeves*, which held that a *prima facie* case and sufficient evidence of pretext may permit a finding of discrimination absent other independent evidence. Thus, the question of whether *additional* evidence is needed to rebut the same actor inference is "no."

[11] Barry Corp. argues that this "but-for" language requires a plaintiff to establish that age was "the reason that the employer decided to act." Mot. 16 (emphasis in original). In *Gross v. FBL Fin. Servs.*, 557 U.S. 176, 177-78 (2009) the Supreme Court concluded that the ADEA requires proof that the age discrimination must be the but-for cause of the adverse action. But the Fifth Circuit has recognized that "but for cause" does not mean "sole cause," and that ADEA plaintiffs need not establish that discrimination was the sole cause, as long as age was the factor that made a

As previously noted, Jones has provided evidence establishing a *prima facie* case of age and sex discrimination. Though the Court will not recite all the evidence here, Jones has raised evidence that she was qualified for a position and that a younger male employee, who was less qualified than she was, was given the position. She has also raised evidence that Barry Corp.'s reasoning was false or unworthy of credence. In *Reeves,* the Supreme Court stated that the *prima facie* case, combined with sufficient evidence to find that the asserted justification was false, may permit the trier of fact to conclude that the employer unlawfully discriminated. 530 U.S. at 148. The Supreme Court offered this caveat:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* In other words, the Supreme Court has recognized that it is not enough to disbelieve the employer's reason; the factfinder must believe the plaintiff's explanation of discrimination. *Id.* at 147. Even if there is abundant evidence that the employer's reason is not true, there is no liability if there is uncontroverted evidence that no discrimination occurred. *Id.*

However, that is not the case here. For the reasons already articulated, this Court finds that Barry Corp. has not "conclusively" established a nondiscriminatory reason for terminating Jones and that Jones has provided sufficient evidence for a jury to infer Barry Corp.'s reason was pretext

---

difference. *See Leal v. McHugh*, 731 F.3d 405, 409 (5th Cir. 2013) (citing *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010)).

for discrimination. Accordingly, this Court finds that there is sufficient evidence to create a genuine issue of material fact as to pretext. Barry Corp. is therefore not entitled to judgment as a matter of law, and its motion will be denied.

## V.   CONCLUSION

Jones has not failed to establish the essential elements for her Title VII and ADEA claims. She successfully raised a *prima facie* case of discrimination. Barry Corp. also successfully articulated a legitimate, nondiscriminatory reason for her termination. Finally, Jones was able to point to inconsistencies with Barry Corp.'s reasoning, raising a fact question as to whether Barry Corp.'s rationale for terminating her was false or unworthy of credence. Coupled with her *prima facie* elements, this Court finds that a reasonable jury could infer discriminatory intent. Accordingly, defendant's motion for summary judgment will be DENIED.

A separate order shall issue.

Royce C. Lamberth
United States District Judge

DATE: 3/17/17

21